**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LAWRENCE C. MATHIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **DCR MORTGAGE III SUB I, LLC;** | § | |
| **DCR REAL ESTATE III SUB I, LLC;** | § | **CIVIL ACTION NO.: 1:13-CV-00192-SS** |
| **DIRECTED CAPITAL RESOURCES,** | § | |
| **LLC; RCH LOAN SERVICING, LLC;** | § | |
| **CHRISTOPHER SCOTT MOENCH;** | § | |
| **FRED S. RAZOOK, JR.; LANCE B.** | § | |
| **AMANO; AND SUANNE K. YAGMIN,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Lawrence C. Mathis, hereinafter referred to as "Plaintiff" or "Mathis," and files this First Amended Complaint complaining of defendants DCR Mortgage III Sub I, LLC ("DCR"); DCR Real Estate III SUB I LLC ("DCR Real Estate"); Directed Capital Resources, LLC ("Directed Capital"); RCH Loan Servicing, LLC ("RCH"); Christopher Scott Moench ("Moench"); Fred S. Razook, Jr. ("Razook"); Lance B. Amano ("Amano"); and Suanne K. Yagmin ("Yagmin") hereinafter collectively referred to as "Defendants," and respectfully shows:

## A. VENUE AND JURISDICTION

1.      Venue is proper in Travis County because the real property subject to this suit is located in Travis County, Texas, it is the place in which all or a substantial portion of the acts or omissions giving rise to the causes of action occurred and this case involves the sale or transfer of real property located in Travis County.

2.      This Court has already ruled on Plaintiff's Motion for Remand and determined that the Court has jurisdiction over this matter.

## B. PARTIES

3.      Plaintiff Lawrence C. Mathis ("**Mathis**") is an individual residing in Travis County, Texas.

4.      Defendant DCR MORTGAGE III SUB I, L.L.C. ("**DCR**") is a Delaware limited liability company.  DCR has answered and appeared in this action.

5.      Defendant DCR Real Estate III SUB I LLC ("**DCR Real Estate**") is a limited liability company.  DCR Real Estate has answered and appeared in this action.

6.      Defendant Directed Capital Resources, LLC ("**Directed Capital**") is a Florida Limited Liability Company.  Directed Capital Resources has answered and appeared in this action.

7.      Defendant RCH Loan Servicing LLC ("**RCH**") is a Florida Limited Liability Company.  RCH has answered and appeared in this action.

8.      Defendant Christopher Scott Moench ("**Moench**") is an individual, who resides in Saint Petersburg, Pinellas County, Florida.  Moench has answered and appeared in this action.

9.     Defendant Fred S. Razook, Jr. ("**Razook**") is an individual, who resides in Saint Petersburg, Pinellas County, Florida.  Razook has answered and appeared in this action.

10.     Defendant Lance B. Amano ("**Amano**") is an individual, who resides in Poway, San Diego County, California.  Amano has answered and appeared in this action.

11.     Defendant Suanne K. Yagmin ("**Yagmin**") is an individual, who resides in Saint Petersburg, Pinellas County, Florida.  Yagmin has answered and appeared in this action.

12.     All of the DCR entities, Directed Capital, DCR III Investors, LLC ("DCR Investors"), DCR Mortgage Partners III, LP ("DCR Partners"), DCR and DCR Real Estate, share common ownership and/or common managers and its ownership/control structure is as follows:

- Directed Capital is the Managing/Majority Member of;
- DCR Investors, who is the General Partner of;
- DCR Partners, who is the Sole Member of;
- DCR, who is a Member of;
- DCR Real Estate.

13.     **Moench** is: (1) an owner and/or Managing Member of Directed Capital; (2) an owner and/or Manager of DCR Investors; (3) an owner and/or Manager of DCR Partners; (4) an owner and/or Manager of DCR; and (5) an owner and/or Manager of DCR Real Estate.

14.     **Razook**: (1) was an owner and/or Managing Member of Directed Capital from 2003 through 2007; (2) is an owner and/or Manager of DCR Investors; (3) is an owner and/or Manager of DCR Partners; (4) is an owner and/or Manager of DCR; (5) is

an owner and/or Manager of DCR Real Estate; and (6) is an owner and/or Manager of RCH.

15.     **Amano** is a Senior Vice President of Directed Capital and interacted with Mathis in that capacity on behalf of Directed Capital and DCR as the loan officer for the Note since the purchase of the Note in 2006.  While all defendants reside and operate in St. Petersburg, Florida, Amano resides and conducts business from San Diego, California.

16.     **RCH** is the loan servicer of the Note at issue in this lawsuit.

17.     **Yagmin** has been responsible for the loan servicing of the Note at issue in this suit, first as an agent of DCR up until October 11, 2007, and thereafter as an agent of RCH.

18.     The principal business address listed on public documents for Moench, Razook, Directed Capital, DCR Investors, DCR Partners, DCR, and DCR Real Estate is 333 Third Avenue North, Suite 400, St. Petersburg, Florida  33701.

19.     The principal business address on public documents for RCH and Razook is 360 Central Avenue, Suite 1220, St. Petersburg, Florida  33701.

## C. CONDITIONS PRECEDENT

20.     All conditions precedent to filing suit have been satisfied.

## D. BACKGROUND

21.     This case involves fraud, forgery and perjury, all in a concerted effort to wrongfully foreclose on property purchased by Mathis in or around March of 2000.  The wrongful foreclosure occurred on February 1, 2011.

22.     Mr. Mathis owns and operates SmartMail of Austin, Inc. ("SmartMail"), a commercial laser printing and direct mail business in Austin, Texas.  On March 31, 2000, he bought an approximately 20,000 square foot building located at 2200 Tillery Street in Austin, Texas (the "Tillery Building").

23.     Mathis arranged for financing through the Small Business Administration (SBA) 504 program.  Generally, the agreement between Mathis and the SBA provided that Mathis would obtain financing through an institutional lender (the first lien holder) for approximately 50% of the purchase price; the SBA, through its affiliated entity Cen-Tex Certified Development Corporation ("CEN-TEX CDC"), would provide second lien financing for approximately 40% of the purchase price; and Mathis would provide the remaining 10% as a down payment.

24.     Accordingly, Mathis obtained financing for $440,000 (approximately 50% of the total purchase price) from Norwest Bank, N.A. (who later merged into Wells Fargo), ("Norwest/Wells Fargo") and on March 31, 2000, Mathis executed a first lien note payable to Norwest/Wells Fargo in the original principal sum of $440,000 (the "Note"). The Note was secured by a deed of trust (the "Deed of Trust") signed by the same parties on the same day.

25.     Although Mathis did make some untimely payments to Norwest/Wells Fargo, all of the payments were accepted and Norwest/Wells Fargo never informed Mathis that future late payments would not be accepted.  At no time did Norwest/Wells Fargo accelerate the Note.

26.     On or about September 15, 2006, DCR acquired the Note and the Deed of Trust from Norwest/Wells Fargo.  At that time, the Note was in arrears three payments in

the aggregate amount of $7,803.84.  At that time, DCR may have had the right to pursue remedies under the Note, but chose not to.  Instead, on September 22, 2006, DCR accepted a late payment from Mathis and applied it as the installment due July 15, 2006, and, over the course of the next two years, DCR continued to accept late payments from Mathis.  At no time prior to 2009 had DCR or its representatives ever represented to Mathis that the Note had been accelerated.  At no time prior to 2009 had DCR or its representatives ever communicated, either orally or in writing, that DCR would no longer accept late payments.

27.     In early 2007, Defendant Yagmin, on behalf of DCR, contacted Mathis to have Mathis assign a life insurance policy to DCR and to request that DCR be named loss-payee on SmartMail's casualty insurance policy.  At the time, Yagmin was servicing the Loan for DCR in her capacity for DCR Loan Servicing, LLC (not currently a defendant, but sharing ownership and/or management with other DCR entities).  Yagmin was responsible for servicing the loan and knew or had reason to know about any and all correspondence sent to Mathis, including any alleged acceleration notices.

28.     In February, 2007, Defendant Amano contacted Mathis to set an appointment to tour the Tillery Building.  Shortly thereafter Amano did visit Austin and toured the Tillery Building with Mathis.  On May 1, 2007, the Tillery Building went under contract at a selling price of $1.45MM.  The sales contract ultimately expired on July 30, 2007..  During this time, Amano offered interest rate terms of a forbearance agreement but did not then or at any time present an agreement form or draft.  No forbearance agreement was ever signed.

29.     In August of 2007 Amano sent email correspondence requesting that Mathis bring the loan "current" at an inflated past-due amount and an incorrect interest rate.  Amano stated the Note interest rate at 13.5% which Mathis questioned.  Mathis requested documentation as to DCR's calculation of interest and his payment arrears. [The Note called for floating Wall Street Journal Prime Rate + 0 adjusted annually on the anniversary date of the Note (March 31st) and a default rate on matured unpaid principal and interest which Mathis interpreted as late payments.]

30.     On October 11, 2007, Amano sent correspondence informing Mathis that loan servicing had been transferred from DCR to Defendant RCH and that Defendant Yagmin would continue to service the loan, but would be doing so as an agent of RCH instead of her previous capacity as an agent of DCR.  The letter was sent from DCR's headquarters in St. Petersburg, Florida and bears the typist's initials of Defendant Yagmin and Amano's signature apparently signed and initialed by a person other than Amano.  On information and belief, since Amano operated from San Diego, Yagmin and others frequently signed documents on behalf of Amano in the course of business.

31.     In January of 2008 Mathis also received an auditor's letter from DCR dated January 15, 2008 that noted the incorrect interest rate of 13.25% which Mathis disputed.  Mathis annotated on the letter, "Interest rate indicated is incorrect.  Actual interest is 8.25% with 5% penalty interest on late payments only."  He forwarded the annotated letter to DCR's auditors.  The auditor's letter also indicated a loan maturity date of September 15, 2020, the original non-accelerated maturity date of the loan.

32.     In December 2007 and January 2008 Amano and Mathis exchanged correspondence concerning DCR's calculation of the Note.  Mathis consulted with his

attorney and informed Amano by email that the Note would have had to be accelerated to entitle DCR to charge default interest on the entire principal balance.

33.     Throughout 2008, Mathis did not receive a response on his dispute of the incorrect interest rate.  Mathis did, however, make six payments during 2008 in the original amounts set forth in the Note, all of which were accepted by DCR without question.

34.     Amano testified in Mathis I that in the third or fourth quarter of 2008, he and the partners, which, by information and belief, would have included Defendants Razook and Moench, decided to foreclose on the Tillery Property.  In December 2008, unaware of any intent to foreclose, Mathis received a written purchase offer of $1.525MM which he had accepted and for which the buyer in January 2008 was preparing final contract documents.

35.     On January 20, 2009, CEN-TEX CDC received draft foreclosure documents on the Tillery Property from Amano (CDC held the 2nd lien as facilitator of the US SBA 504 loan program and also a 3rd lien on a 2007 loan to Mathis).  The documents stated that the Note had been previously accelerated.

36.     On January 22, 2009, after learning from CEN-TEX CDC that DCR had sent the "proposed" foreclosure notice and had alleged previous acceleration of the Note, Mathis sent Amano a letter by certified mail disputing that the Note had been accelerated. Mathis requested evidence of the acceleration.  DCR did not respond to Mathis' letter.

37.     On February 25, 2009, Mathis tendered a check for 3 additional installment payments.  On April 8, 2009, Mathis, through his attorney and in the form of a cashier's check, tendered a payment for $52,025.60, the total amount of installments

that had not been paid as of that date.  The payment was received by DCR on April 9, 2009.  As of April 10, 2009, neither DCR nor any of its representatives had told Mathis that DCR would not accept late payments, that it would only accept full payment of the note.  As of April 10, 2009, neither DCR nor any of its representatives had provided Mathis with notice that the Note had been accelerated.

38.     On April 10, 2009, after Mathis, his attorneys and CEN-TEX CDC  had repeatedly throughout almost three months requested proof of acceleration and after Mathis had tendered payment for all past due amounts, DCR appointed attorney Jeffrey Walsh as the substitute trustee under the Deed of Trust.  On April 13, 2009, Walsh signed and sent a foreclosure notice to Mathis stating that a foreclosure sale was to take place on May 5, 2009.  The notice again stated that "by previous correspondence, you were advised that the Note was accelerated."  (That same language was contained in each of four subsequent foreclosure notices to Mathis including the notice that declared the February 1, 2011 sale.)

39.     In a letter dated April 12, 2009 sent by certified mail to Mathis and received by him on or about April 17, 2009, Amano and DCR made reference to an "Acceleration Notice" that allegedly accelerated the Note on February 19, 2007 (the "Forged Acceleration Notice"). Amano stated in the April 12 letter that he had "enclosed a copy of the notice of acceleration;" however, no enclosures were included.    Amano sent an email follow-up on April 17, 2009 to Mathis and his attorney but it contained no text and no attachments.  The same email, however, was sent to CEN-TEX CDC.  Two attachments were successfully transmitted one being the purported February 19, 2007 acceleration letter (the Forged Acceleration Notice).  It was immediately forwarded by

CEN-TEX CDC to Mathis.  Upon receiving the purported February 19, 2007 letter, Mathis knew it was not a document he had received or previously seen.  Mathis and his attorney noticed peculiarities about the document, notably that, while it bore the signature of Lance Amano, the letter was not printed on letterhead.  As in previous correspondence, the typist's initials "sy" (Sue Yagmin, as Amano later testified) appeared below the signature.  No proof of mailing, certified mail receipt numbers or postal markings of any kind accompanied the attachment.

40.     By information and belief, based on the evidence presented in *Mathis I*, Amano forged the Forged Acceleration Notice in April of 2009 and falsely testified about having mailed the Forged Acceleration Notice in order to wrongfully foreclose on the Tillery Building. Yagmin, who was responsible for servicing the loan knew or had reason to know that no acceleration notice had been sent and that the Forged Acceleration Notice was forged.   On information and belief, Yagmin participated in the forgery and the attempt to wrongfully foreclose.

41.     Amano, Directed Capital and DCR created the document on April 17, 2009 by the act of transmitting it to CEN-TEX CDC and representing its existence and authenticity.   Razook and Moench knew or had reason to know that the acceleration notice had been forged and failed to disclose same to Mathis.  All Defendants, despite their knowledge of the forged acceleration notice, failed to disclose same to Mathis and agreed to and participated in the wrongful foreclosure.

42.     Amano testified at trial that the partners, which, by information and belief, would include Razook and Moench, made the decision to foreclose and they did so despite possessing no documentation to support the authenticity of the Forged

Acceleration Notice.  Therefore, the defendants, all of whom were either involved in the decision to foreclose or were involved in the foreclosure process, acted with full knowledge that the Forged Acceleration Notice was forged. Yagmin and RCH serviced the Note.  All mailed notices received by Mathis in 2006 , 2007 and 2008 had originated from DCR or RCH offices in St. Petersburg..  Yagmin and RCH  knew that the Forged Acceleration Notice was forged because it was not sent in the same manner as all other notices sent by DCR.  On information and belief, Yagmin and RCH participated in the forgery of the Forged Acceleration Notice.

43.     On April 29, 2009, Mathis filed a suit for declaratory judgment to prevent Defendants from foreclosing on the Tillery Building.  Between April 2009 and the trial in March, 2010, Amano took advantage of the long time period to develop and perfect an elaborate story to convince Mathis and the trial court that the acceleration notice had in fact existed and been sent on February 19, 2007.  The story involves the weather.  Amano vividly recalled having walked across a bridge in a rainstorm to a post office near his office in the UTC section of La Jolla, California.   He said he remembered the day because of the rainstorm.  Upon processing the certified mail with a postal clerk he remembered being shocked at the high cost of certified mail.  He testified he rarely sends certified mail himself which was why he had such a clear memory of the day.  Despite repeated requests before trial he testified he had looked for but could not find the Certified Mail Receipt that would have been returned by the postal clerk.  Additionally, he testified that he had looked for but could not find the Return Receipt Card that would have been returned to him following delivery.

44.     Only days before the trial, Mathis and counsel decided to check weather records in La Jolla.  They were able to determine that significant rainfall occurred on only one day in February of 2007 in San Diego – February 19, 2007.  Despite this wonderful coincidence that would have lent credibility for Amano's story, Amano apparently failed to consult his calendar for February 2007.  Had he done so he would have learned that February 19, 2007, while a rainy day in La Jolla, California, was also Presidents' Day, a federal holiday.  Of course, the post office was closed.  Amano has since never recanted his story nor has DCR or any of the Defendants in some way authenticated the February 19, 2007 letter.  Despite Amano's testimony about the February 19, 2007 having been proved false in open court, the trial court nevertheless granted declaratory judgment in favor of DCR and allowed DCR to proceed with foreclosure.

45.     In its Findings of Fact and Conclusions of Law, the fact of DCR having sent the February 19, 2007 letter is recited.  Upon appeal, DCR in its Appellee brief continued to assert the authenticity of the February 19, 2007 acceleration letter.  In oral argument before the 8th Court of Appeals, DCR's counsel again insisted that the letter had been sent and that it had effected acceleration.

46.     On February 1, 2011, despite having knowingly obtained said judgment by fraud, forgery and perjury, Defendants Amano, Directed Capital and DCR foreclosed on the Tillery Building.  Amano, Razook, Moench, Directed Capital and DCR used their subsidiary, DCR Real Estate to purchase the Tillery Building after DCR itself bid on the building.

**E. CAUSES OF ACTION**

47.     The allegations contained in the foregoing paragraphs are incorporated by reference for all purposes within each section hereafter.   Additionally, the allegations contained in each section are incorporated within each other section for all purposes.

**F.       COUNT ONE:  WRONGFUL FORECLOSURE**

48.     Defendants are liable to Plaintiff for wrongfully foreclosing on the Tillery Building and taking affirmative steps of fraud and deceit in furtherance of the wrongful foreclosure.   There was a defect in the foreclosure sale proceedings.   DCR failed to provide notice or declaration of acceleration.   Amano, Directed Capital and DCR lied about having provided the Forged Acceleration Notice.   After Plaintiff tendered payment for past due amounts on the Note, Amano, Directed Capital and DCR forged the Forged Acceleration Notice in order to foreclose when they had no legal right to do so.   Based on investigation, all Defendants were involved in the decision to foreclose or involved in the foreclosure process itself with full knowledge that the notice of acceleration had not been sent and that the Forged Acceleration Notice was forged .   Defendants Directed Capital, DCR, Amano, Razook and Moench made the decision to foreclose on the Tillery Building despite having knowledge that there was no documentation of any acceleration notice or declaration and that the Forged Acceleration Notice was forged.

49.     There was a grossly inadequate selling price at the sale.    Mathis had previously and recently received offers and contracts for sale of the Tillery Building for $1.45MM in 2007 and for $1.525MM and $1.55MM in 2008, yet the property only sold for $500,000.  As a further example of the intertwined nature of these DCR entities,  their use as a mere business tool of the principals, and the fraud and collusion involved in the

foreclosure and the purchase of the Tillery Building, DCR is the entity that actually bid at the foreclosure sale, yet DCR Real Estate is the entity that purchased it.  Shortly after the sale, DCR Real Estate listed the Tillery Building for $1.6MM.

50.     There was a causal connection between the defect and the grossly inadequate selling price.  Had Amano, Directed Capital and DCR not been able to foreclose without fraudulently obtaining the judgment, which has been reversed and is now void, Mathis would not have suffered all of the damages and the sale would not have occurred, Mathis would have been able to sell the Tillery Building for the fair market price of approximately $1.5MM, and damages related to the foreclosure and eviction would not have been suffered.  Mathis' company was evicted by forcible detainer from the Tillery Building causing Mathis to vacate a 20,000 sq. ft. facility that stored mostly customer property and from where employees processed customer orders and shipments. He was forced to locate alternative office/warehouse space, construct new storage racking, relocate employees and services such as telephone and internet, transport heavy material to the new location and notify customers and suppliers of the change. Plaintiff suffered significant losses as a result of the eviction.

51.     Plaintiff has been damaged as a result of Plaintiffs wrongful foreclosure.

### G.     COUNT TWO:  COMMON-LAW FRAUD, STATUTORY FRAUD, AND CONSPIRACY TO COMMIT FRAUD

52.     Defendants Amano, Directed Capital and DCR made affirmative acts of fraud and deception and affirmative representations in making false statements that the Note had been accelerated or that the notice had been sent, by forging the Forged Acceleration Notice and testifying falsely about its existence, authenticity and its mailing.

Defendants fraudulently obtained a judgment allowing them to unlawfully foreclose. Amano made false representations about the creation and delivery of the document. All of the Defendants had actual knowledge or had reason to know of the falsity of Amano's statements and the forged document and failed to disclose such falsity even though they had a duty to do so.

53.     Yagmin was responsible for servicing the loan and sending communications regarding the loan. She knew that the Forged Acceleration Letter had not been sent and that the copy created and/or produced by Amano in April 2009 was forged. Additionally, on information and belief, she participated in the drafting and/or creation of the forged document in or before April 2009.

54.     Razook and Moench participated in the decision to foreclose despite having knowledge that notice or declaration of acceleration had not occurred, that the Forged Acceleration Notice was forged, and that DCR did not have the right to foreclose. Such information was material information relating to the Tillery Building and the foreclosure of the Tillery Building.

55.     Defendants Amano, Directed Capital and DCR made the foregoing fraudulent representations to Plaintiff that were both material and false. When Defendants Amano, Directed Capital and DCR made these representations, Defendants knew that they were false. Defendants made the representations with the intent that Plaintiff act on them and/or that the Court act on them.

56.     Plaintiff in fact relied on these representations to his detriment and did act on them. Based on Defendant Amano, Directed Capital and DCR's false representations about having sent acceleration notice, about having evidence of acceleration and in

forging the Forged Acceleration Notice, and that DCR had the right to foreclose, Plaintiff was required to act, and did act, to prevent the unlawful foreclosure. Plaintiff filed the declaratory judgment action in *Mathis I* and spent significant time and resources in an attempt to prevent the foreclosure.

57.     In addition, Plaintiff detrimentally relied on the fraudulent acts in acquiescing and allowing the foreclosure to proceed once the improper judgment was obtained. Plaintiff detrimentally relied on Defendants' fraudulent acts in acquiescing and allowing himself and his business to be evicted. In fact, all of the actions taken in this matter in attempting to prevent the foreclosure, prosecuting the declaratory judgment, overturning the trial court's judgment, and significant business costs and expenses, were done in detrimental reliance on the fraudulent acts. Mathis has paid additional amounts to the 2nd and 3rd lien holders in reliance on the fraudulent acts. Defendants' acts and representations constitute common-law fraud which has caused Plaintiff injury.

58.     Pleading in the alternative, if necessary, Defendants made the foregoing representations, made affirmative acts of fraud and deception, and/or failed to disclose material facts – with the intent that Plaintiff rely on them. Defendants' acts and representations constitute fraud that has caused the Plaintiff injury.

59.     Pleading in the further alternative, if necessary, all Defendants concealed from or failed to disclose the fact that the acceleration notice had not been sent, the fact that the Note had not been accelerated, the fact that the Forged Acceleration Notice was forged and the fact that DCR had no right to foreclose. Defendants had a duty to disclose these facts or created a duty to disclose them by their actions and representations. By supplying information Amano, DCR, Directed Capital, Yagmin and RCH created several

duties to disclose the truth – a duty to disclose new information when the new information makes previous disclosures false or misleading, a duty not to provide partial information when doing so would create a false impression, and a duty, when making voluntary disclosures, to tell the whole truth.  Amano, DCR, Directed Capital, Yagmin and RCH all breached those duties by failing to disclose that the acceleration notice had been sent, the Note had not been accelerated, that the Forged Acceleration Notice was a forgery, and that DCR did not have the right to foreclose.

60.     All the facts and representations were material.  Defendants knew that Plaintiff was ignorant of these facts and did not have an equal opportunity to discover them.  Defendants were deliberately silent when they had a duty to speak.  By failing to disclose the facts, Defendants intended that Plaintiff and the Court take some action in acquiescing to and/or allowing the foreclosure to proceed and in inducing the other acts mentioned herein that Mathis took in reliance on the fraudulent acts and/or omissions. As set forth above, Plaintiff justifiably relied on Defendants' false representations and nondisclosure.  Plaintiff was injured as a result of acting without knowledge of the undisclosed facts.

### H.     COUNT THREE:  FORGERY

61.     In the furtherance of their unlawful foreclosure, Amano and/or other DCR representatives committed forgery of a commercial instrument as defined under Section 32.21 of the Texas Penal Code and any related provisions.  Such forgery was a felony under the laws of the state of Texas and such forgery was committed intentionally and willfully in order to unlawfully foreclose on the Tillery Building and convert Plaintiff's property.  Plaintiff has been damaged as a result of the forgery.  Defendants Amano,

DCR and Directed Capital altered, made, completed, executed and/or authenticated the Forged Acceleration Notice so that it purported to have been executed at a time or place other than was in fact the case. They additionally transferred, passed, published or otherwise uttered a forged writing and possessed a forged writing with intent to utter it. Defendants Amano, DCR, Directed Capital, Yagmin and RCH forged the Forged Acceleration Notice with intent to defraud and harm Mathis. The Forged Acceleration Notice is a commercial instrument.

62.     On information and belief, Yagmin and RCH committed some or all of the foregoing acts in forging the Forged Acceleration Notice.


I.      **COUNT FOUR:  CIVIL CONSPIRACY**

63.     Each of the Defendants was a member of a combination of two or more persons, the object of such combination of persons was to accomplish an unlawful purpose and/or accomplish a lawful purpose by unlawful means. All Defendants were a part of this combination and their object was to unlawfully foreclose on the Tillery Building or lawfully foreclose on the Tillery Building by unlawful means and/or foreclose on the Tillery Building by fraudulently misrepresenting that the acceleration notice had been sent, that the Note had been accelerated and/or by committing or aiding and abetting fraud and forgery of the acceleration notice to unlawfully foreclose on the Tillery Building. Further, the combination's object was to commit fraud and/or forgery to achieve their purpose.

64.     All Defendants had a meeting of the minds on the object or course of action.  Each of the Defendants was aware of the misrepresentations about the

acceleration notice and the fact that the Forged Acceleration Notice was forged and they made the affirmative decision so they could proceed with foreclosure.  One or more of the members and/or Defendants committed an unlawful, overt act to further the object or course of action.  Amano, DCR and Directed Capital all lied about the existence and sending of an acceleration notice, about the acceleration of the Note, and about a forged document. Defendants Amano, Razook, Moench, Directed Capital, DCR and DCR Real Estate all participated in the decision to foreclose with full knowledge that the acceleration notice had not been sent, that it had been forged and that acceleration had not been declared.

65.     Plaintiff suffered injury as a proximate result of the wrongful act.

## J.      COUNT FIVE:  BREACH OF CONTRACT

66.     The Note and the Deed of Trust constitute a contract relating to the purchase of the Tillery Building.  Defendant DCR was a party to the contract as the purchaser and holder of the Note.   Defendants RCH and Directed Capital were additionally responsible for servicing the loan and therefore responsible for the breaches. Under the terms of the Agreement, Defendants DCR, RCH and Directed Capital were prohibited from foreclosing unless the Note was in default and unless Defendants DCR, RCH and Directed Capital provided notice of acceleration of the Note.  Defendants DCR, RCH and Directed Capital breached the agreement by foreclosing on the Tillery Building when Plaintiff had tendered all past due amounts and after all Defendants committed unlawful acts of fraud and deceit in attempting to foreclose on the Tillery Building. Plaintiff has been damaged as a result of Defendants' breach of contract.  Plaintiffs seek

all damages available under law for the Defendants breaches – including an award of reasonable and necessary attorney's fees.

67.     To the extent Defendants assert that Mathis was in breach of the contract, Defendants waived any right and/or excuse of their own performance by continuing with the contract and accepting payments under the contract until Mathis was no longer in breach of the contract.

### K.     COUNT SIX:  NEGLIGENCE

68.     Defendants owed the duty to Plaintiff to use ordinary care in making representations and in ascertaining the accuracy of information of whether the acceleration notice had been sent, whether the Note had been accelerated, that the Forged Acceleration Notice was forged, and that DCR did not have the right to foreclose.  The facts set forth herein show that Defendants Amano, DCR, Directed Capital, Yagmin and RCH breached the duty owed to Plaintiff to use ordinary care in making representations and in ascertaining the accuracy of information and communicating the false representations of whether the acceleration notice had been sent, whether the Note had been accelerated, that the Forged Acceleration Notice was forged, and that DCR did not have the right to foreclose. The foregoing conduct of the Defendants constitutes negligence and has been a proximate cause of damages to Plaintiff. Plaintiff further alleges that the all Defendants failed to disclose information relating to the acceleration of the Note and/or the forgery of the Forged Acceleration Letter as set forth below.

**L.**     **COUNT SEVEN:  NEGLIGENT MISREPRESENTATION**

69.     The Defendants Amano, DCR, Directed Capital, Yagmin and RCH represented to Plaintiff, in the course of a transaction where they had an interest, among other false information already identified, that there had been an acceleration of the Note when in fact no such acceleration or notice of acceleration had been given and that the Forged Acceleration Notice was authentic.   Defendants Amano, DCR, Directed Capital, Yagmin and RCH took affirmative steps to supply that false information for the guidance of Plaintiff, and they did not exercise reasonable care or competence in obtaining or communicating the information. Additionally, by supplying information Amano, DCR, Directed Capital, Yagmin and RCH created several duties to disclose the truth – a duty to disclose new information when the new information makes previous disclosures false or misleading, a duty not to provide partial information when doing so would create a false impression, and a duty, when making voluntary disclosures, to tell the whole truth. Amano, DCR, Directed Capital, Yagmin and RCH all breached those duties by failing to disclose that the Note had not been accelerated, that the Forged Acceleration Notice was a forgery, and that DCR did not have the right to foreclose.

70.     As specified in the sections relating to fraud, Plaintiff justifiably relied on the Defendants' representations, and these negligent misrepresentations have proximately caused Plaintiff injuries.

**M.**     **PIERCING THE CORPORATE VEIL AND ALTER EGO**

71.     Each and every Defendant is liable for the foregoing causes of action and the corporate veil must be disregarded because the corporate forms were, and are continuously being abused.  The corporate forms were used as a sham to perpetrate a

fraud and the corporate forms were organized and operated as a mere tool or business conduit of each other.  Additionally, the Defendants caused the corporate forms to be used for the purpose of perpetrating an actual fraud and did in fact perpetrate an actual fraud on plaintiff for each of the defendant's direct personal benefit.

72.     Razook and Moench each have a financial interest, ownership and/or control over DCR and each entity at issue in this suit.  Razook and Moench are both Managing Members and/or partners in each of the five DCR entities – Directed Capital, DCR Investors, DCR Partners, DCR and DCR Real Estate – and therefore have ownership and control of each of those entities.   There is such a unity among each of the corporate defendants and individual defendants that the separateness of the single entities has ceased.

73.     The very structure of the DCR entities appears intentionally and unnecessarily complex, layered with similarly named entities for the sole purpose of giving the appearance of separate entities in an effort to shield the principals from liability, when all actions are taken by those same principals several layers removed.  The following is the corporate structure of five of the DCR entities:

Level 6 – Razook and Moench, Managing Members of;

Level 5 – Directed Capital, Managing/Majority Member of;

Level 4 – DCR Investors, General Partner of;

Level 3 – DCR Partners, sole member of;

Level 2 – DCR, Managing Member of;

Level 1 – DCR Real Estate

74.     Defendants have filed public documents that show the following title and signature: "Christopher S. Moench" signing as "Managing Member of [Directed Capital Resources, LLC], Managing Member of DCR III Investors, LLC, General Partner of [DCR Mortgage Partners III, LP]".  Additionally, Amano acted and sent correspondence to Mathis primarily as Senior Vice President of Directed Capital Resources, LLC in this case.  In other words, the intermediary entities appear to exist in name only as way to add layers of perceived limitations of liability when the actions of DCR and DCR Real Estate are all performed by the same principals and agents of Directed Capital and the other entities.

75.     Regardless of whether there are legitimate purposes for the use of separate entities (for instance separation of investments and/or limited partners or members), which Defendants will undoubtedly argue, the entities themselves are mere business tools of the principals and officers, Razook, Moench and Amano, all of whom act in one concerted effort to foreclose (and in this case unlawfully foreclose) on distressed properties and all of whom participate in the decisions, have actual knowledge, and act on behalf of all entities.

76.     It is equally clear that the same principals and officers, Razook, Moench and Amano, participated in this scheme to defraud Mathis and unlawfully foreclose on the Tillery Building.  The corporate entities are incidental to this scheme and the actions taken.  As an example, DCR Real Estate is controlled by the same principals.  DCR actually bid on the Tillery Building at the foreclosure sale and was the highest bidder, but Defendants had DCR Real Estate actually complete the purchase the Tillery Building to move their asset to another shell controlled by them.

77.     To hold only DCR and/or Amano liable would result in injustice.

## N.     DAMAGES – ALL DEFENDANTS

78.     Defendants' unlawful conduct, as more specifically set forth above, has been a proximate and producing cause of damages to Plaintiff in an amount within the jurisdictional limits of this Court. These damages include, but are not limited to, expectation ("benefit of the bargain") damages; reliance damages; loss-of-use damages; loss of business damages, lost profits, restitution damages; other out-of-pocket expenses, the difference of the balance on the Note and the fair market value of the Tillery Building at the time of sale.  Plaintiff has been damaged in the amount that is the difference between the fair market value of the Tillery Building and the remaining balance due on the Note at the time of the wrongful foreclosure.  Plaintiff has been damaged actual costs and expense from being evicted from the Tillery Building as well as damages incurred through costs of debt service on the 2nd and 3rd liens on the Tillery Building and loss of business revenue as a result of the unlawful foreclosure and eviction.  Plaintiff has also suffered loss of credit.  Plaintiff has suffered mental anguish as a result of Defendants' unlawful acts. Plaintiff has also been damaged in attorney's fees he has been required to incur as a result of Defendants' unlawful acts.  All of the foregoing damages were foreseeable and Defendants' unlawful conduct, including its fraudulent conduct, was a substantial factor in causing the damages.

## O.     EXEMPLARY DAMAGES

79.     Plaintiff further alleges that Defendants acted knowingly and intentionally in connection with their wrongful foreclosure, misrepresentations and failure to disclose

information relating to the Tillery Building and the foreclosure of the Tillery Building, and Plaintiff is therefore entitled to recover additional damages.  The conduct of the Defendants was committed intentionally, willfully, maliciously, fraudulently, and in reckless disregard of Plaintiff's rights and resulted from Defendants' fraud, malice and/or gross negligence.  Plaintiff further alleges that the conduct of the Defendants was unconscionable.  Plaintiff seeks recovery of punitive damages from the Defendants sufficient to punish and deter such conduct from occurring in the future.

80.    Furthermore, Plaintiff alleges that the limitation on amount of recovery set forth in Section 41.008 of the Texas Civil Practice and Remedies Code does not apply because Plaintiff is asserting a cause of action and seeks recovery of exemplary damages based on conduct described as a felony in the Texas Penal Code and such conduct was committed knowingly or intentionally.  Specifically, Defendants DCR, Directed Capital, Amano, Yagmin and RCH committed a felony in violation of Section 32.21 of the Texas Penal Code in forging the Forged Acceleration Notice, a financial instrument, in their efforts to unlawfully foreclose on the Tillery Building.

## P.    ATTORNEY'S FEES

81.    Plaintiff seeks his reasonable and necessary attorney's fees for services rendered through trial of this matter, together with conditional awards of attorney's fees in the event of an appeal, under §38.001(8) of the Texas Civil Practice and Remedies Code, under any express contractual provision between or among the parties, and/or under any other statute or common law provision pertaining to awards of attorney's fees.

### Q.      PRE- AND POST-JUDGMENT INTEREST

82.      Plaintiff pleads for pre- and post-judgment interest at the highest legal rate.

### R.      JURY DEMAND

83.      Plaintiff has requested trial by jury.

### S.      CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer and that on final trial, Plaintiff have judgment against Defendants, joint and severally, for an amount within the jurisdictional limits of the Court, together with pre- and post-judgment interest as provided by law, costs of court, exemplary damages, reasonable and necessary attorney's fees, and all such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

HOWRY BREEN & HERMAN, LLP.

_____
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
Pat Fitzgerald
State Bar No. 24036566
pfitzgerald@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
(512) 474-7300
(512) 474-8557 FAX

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 10th day of May, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Thomas M. Hanson
Alison R. Ashmore
Michael Wang
DYKEMA GOSETT PLLC
1717 Main Street, Suite 4000
Dallas, Texas  75201
(214) 462-6400
(214) 462-6401 (facsimile)


_____
Randy Howry