IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2013 JUL -8  AM II: 25

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

LAWRENCE C. MATHIS,

          **Plaintiff,**

-vs-

**DCR MORTGAGE III SUB, I, LLC; DCR REAL
ESTATE SUB I, LLC; DIRECTED CAPITAL
RESOURCES, LLC; RCH LOAN SERVICING,
LLC; CHRISTOPHER SCOTT MOENCH;
FRED S. RAZOOK, JR.; LANCE B. AMANO;
and SUANNE K. YAGMIN,**

          **Defendants.**

Case No.  A-13-CA-192-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Dismiss [#20], Plaintiff Lawrence Mathis's Response [#22], and Defendants' Reply [#24]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

As noted in this Court's order denying Mathis's motion to remand, this is the second lawsuit stemming from Defendant DCR Mortgage III Sub I, LLC (DCR)'s attempt to foreclose on a commercial property purchased by Mathis on March 31, 2000. *See Mathis v. DCR Mortg. III Sub I, L.L.C.*, 389 S.W.3d 494, 496 (Tex. App.—El Paso 2012, no pet.) (*Mathis I*). Mathis executed a Note and Deed of Trust in favor of Norwest Bank, N.A. *Id.* The documents eventually passed to DCR, and unlike many foreclosure cases, this lawsuit is not a dispute over whether DCR properly

holds the Note and Deed of Trust. *Id.* Instead, when DCR sought to foreclose on the property in May 2009, Mathis brought suit in state court seeking a declaratory judgment and temporary injunction preventing the foreclosure sale from going forward, all based on the argument DCR had failed to provide Mathis with a proper notice of acceleration (and, consequently, an opportunity to cure). *Id.*

After conducting a bench trial, the state court rendered judgment on June 10, 2010, in favor of DCR. *Id.* The trial court concluded DCR had properly accelerated the Note and was entitled to foreclose, and Mathis was not entitled to any notice of acceleration because he had waived his right to receive such notice. *Id.* 502–04. Mathis filed a notice of appeal on September 7, 2010, but did not post a supersedeas bond to prevent the trial court's judgment from being enforced. On February 1, 2011, DCR foreclosed on the property.[1] Eight months later, on October 10, 2012, the court of appeals reversed the judgment of the trial court. The court of appeals concluded Mathis had not waived his right to receive a notice of acceleration, and because it was "undisputed that there was no notice of intent to accelerate and time to cure," DCR's attempt to accelerate the Note was ineffective. *Id.* at 507–08.

The court of appeals' mandate issued on January 11, 2013. Two days later, Mathis filed this lawsuit against DCR, three other corporate entities, and four individuals who worked as agents for the corporate defendants. Defendants removed to this Court on the basis of diversity jurisdiction, and this Court denied Mathis's motion to remand. Mathis has since amended his complaint, which states the following causes of action: (1) wrongful foreclosure; (2) common-law fraud, statutory fraud, and

---

[1] Mathis did not file his appellant's brief with the court of appeals until March 3, 2011, having requested and received at least three extensions.

conspiracy to commit fraud; (3) forgery; (4) civil conspiracy; (5) breach of contract; (6) negligence; and (7) negligent misrepresentation.

In short, Mathis's complaint alleges DCR and its employees concocted a scheme to foreclose on the property. Knowing the notice of acceleration had not been properly mailed, Defendant Amano allegedly forged a notice of acceleration, backdated it, and sent it to Mathis as proof of the notice. Amano then allegedly gave false testimony before the trial court in *Mathis I*, telling an elaborate tale of traveling to the post office and mailing the notice of acceleration on February 19, 2007. That date, however, was also apparently President's Day, a federal holiday, and the post office would therefore have been closed. Based on this testimony, Mathis alleges DCR obtained a favorable judgment from the trial court "by fraud, forgery[,] and perjury."[2] Am. Compl. [#15] ¶ 46. Most of Mathis's causes of action stem from this allegedly illegal conduct and the harm Mathis suffered when DCR foreclosed on the property.

DCR now moves to dismiss under Rule 12(b)(6), arguing Mathis's story fails to implicate any defendant other than DCR itself. DCR also argues Mathis fails to state any claim against DCR.

## Analysis

### I.    Motion to Dismiss—Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

---

[2] As a practical matter, it appears this is untrue, regardless of the parties' conduct. Although the trial court explicitly found DCR had sent a notice of acceleration on February 19, 2007, it noted "no notice was required." *Mathis I*, 389 S.W.3d at 502 (quoting trial court's findings of fact). Moreover, the trial court concluded "[n]o notice of intent to accelerate or notice of acceleration was required under the terms of the Note," and therefore the sending of the February 19, 2007 notice was immaterial to the court's decision. *Id.* at 403 (quoting trial court's conclusions of law). While DCR may have *intended* to secure the foreclosure by means of fraud, forgery, or perjury, the judgment it actually obtained was plainly based on a finding of waiver.

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Application

The Court addresses each of Mathis's causes of action in turn.

-4-

A.    **Wrongful Foreclosure**

"The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). According to the court of appeals in *Mathis I*, it is "undisputed" proper notice of acceleration was not given, which would amount to a defect in the foreclosure proceedings.[3] Mathis has further provided sufficient allegations of an inadequate selling price, as the property was sold for approximately $500,000 and promptly relisted for $1.6 million. Mathis also alleges he had received offers in the vicinity of $1.5 million. Furthermore, Mathis has alleged a causal connection, namely, the foreclosure prevented Mathis from selling the property for more money and thus Mathis suffered various financial harms as a result of the foreclosure. The lack of notice and opportunity to cure also prevented Mathis from tendering the amount due and becoming current on the loan, thus preventing the foreclosure. Mathis alleges he did make such an offer to DCR, though it was ultimately refused.

In spite of these allegations, however, the question for the Court is whether the foreclosure was wrongful at the time it was carried out. When DCR foreclosed, it was acting pursuant to a valid and enforceable judgment. Mathis could have posted a supersedeas bond to stay enforcement of the judgment, but did not do so. *See* TEX. R. APP. P. 24.1; *see also Renger v. Jeffrey*, 143 Tex. 73, 182 S.W.2d 701, 702 (1944) ("The supersedeas bond is merely to preserve the status quo of the matters in litigation prior to the issuance of the order or judgment from which an appeal is prosecuted.").

---

[3] The Court does not find such notice was sent, but merely finds Mathis has adequately pleaded a plausible basis for the existence of a defect in the foreclosure sale proceedings. The ultimate effect of the findings of either the appellate court or the trial court on remand in *Mathis I* is a question for another day.

DCR argues it was entitled, absent Mathis superseding the judgment, to rely on the judgment when foreclosing the property, and is therefore immune from Mathis's claims. DCR's argument rests on a single case holding a third party was entitled to rely upon a court order vesting managing conservatorship in the presenters, so long as the court order was not void.[4] *See Gen. Elec. Capital Assurance Co. v. Jackson*, 135 S.W.3d 849, 853 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). From this holding, DCR extracts a broad principle of reliance on the validity of courts orders and "immunity from liability for actions taken in reliance on the judgment." No authority identified by DCR supports such an immunity. Moreover, *General Electric* is distinguishable on its facts, as it involved reliance upon a judgment *by a third party*, not a defendant in the action giving rise to the judgment. *Id.* at 851. Additionally, the judgment relied upon was ultimately affirmed, rather than reversed. *Id.* at 854.

Analogizing to cases involving money damages, Mathis argues he should be able to maintain a wrongful foreclosure action despite DCR's reliance on the court order under a restitution theory. *See Drake v. Trinity Universal Ins. Co.*, 600 S.W.2d 768, 771 (1980) ("'Where a judgment for debt is reversed after it has been enforced by execution, and the case is finally decided in favor of the defendant, he is certainly entitled to restitution . . . .'" (quoting *Peticolas v. Carpenter*, 53 Tex. 23, 29 (1880)); *Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 74–75 (Tex. App.—Eastland 2003, pet. denied). While DCR contends *Mathis I* is distinguishable because it did not involve money

---

[4] Although Mathis vigorously insists the court of appeals' reversal renders the trial court's judgment void, this is incorrect. "A judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). The trial court in *Mathis I* plainly had jurisdiction. The court, in the judgment of the court of appeals, simply made a legal error in determining Mathis had waived his right to receive a notice of acceleration. The trial court's judgment is therefore voidable rather than void. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271–73 (Tex. 2012) (discussing the differences between void and voidable judgments).

damages, the logic and case law underlying the authorities cited by Mathis extend to property as well. *See Cleveland v. Tufts*, 69 Tex. 580, 584 (1888) ("To restore him to this position, the money he has paid must be returned to him, with interest; *and if his property has been taken, he can recover it*, unless the rights of third parties entitled to protection have intervened. It is pretty well settled that, where the plaintiff has purchased at the sale, upon reversal the defendant may recover from him the property itself or its value if it has been alienated." (citation omitted) (emphasis added)).

DCR also argues Mathis may only seek "restitution" in the trial court on remand in *Mathis I*. The case law makes clear such an option is available to Mathis. *See Peticolas*, 53 Tex. at 29 (noting restitution "may be granted in the same case without resorting to a new suit"); *Outdoor Sys.*, 105 S.W.3d at 75 (same). But the permissive language in those same cases does not forbid the benefactor of the reversal from bringing an independent suit to recover, even though doing so is obviously less efficient.[5] DCR cites no authority *requiring* the restitution claim to be brought in the original proceeding, and this Court therefore refuses to dismiss a claim on that basis.

As with many of his claims, Mathis attempts to shoehorn in the other corporate entities and individual defendants here, even though those entities have no relationship to the Note or Deed of Trust. Mathis's allegations of common ownership are insufficient to show the multiple corporate defendants were "not operated as separate entities, but rather integrate[d] their resources to achieve a common business purpose." *Aluminum Chems. (Bol.), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex. App.—Texarkana 2000, no pet.). Similarly, Mathis's allegations confirm the corporate formalities were observed when different corporate defendants (through their respective agents)

---

[5] This is doubly true where, as here, the plaintiff names new defendants and asserts new causes of action, and the defendant removes to federal court.

signed documents, which runs contrary to any "alter ego" theory. *Id.* at 67; *see also Pabich v. Kellar*, 71 S.W.3d 500, 507–08 (Tex. App.—Fort Worth 2002, pet. denied). Nor does Mathis allege any facts indicating any of the corporate defendants are mere shams used for the personal benefit of any individual defendant, which also runs contrary to an alter ego finding. *Aluminum Chems.*, 28 S.W.3d at 67. Even if Mathis could maintain an alter ego claim, he fails to allege any facts identifying any "direct personal benefit" any individual defendant sought or gained by using the corporate forms as shams. *Id.* at 68. Accordingly, while the Court will allow the wrongful foreclosure claim to proceed as against the foreclosing entity, DCR, it will dismiss the claim as against all other defendants.

**B.     Fraud Claims**

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Inguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). The various alleged misrepresentations made by Defendants involve statements claiming the notice of acceleration was sent, forging the backdated notice, and claiming the forgery was legitimate.

Mathis has not pleaded any facts suggesting he relied on any of these representations. To the contrary, Mathis's pleading establishes he did not rely on them. Defendants claimed they had sent a notice of acceleration, and Mathis did not believe them. He did not acquiesce and allow Defendants

to foreclose on the property. Instead, he hired an attorney and filed a lawsuit to prevent the foreclosure precisely because he believed the notice of acceleration had not been mailed to him. "A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment." *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 566 (Tex. App.—Dallas 2009, no pet.). The classic example of fraud would be Mathis relying on Defendants' statements and allowing the foreclosure to go forward. Mathis did the opposite, giving no weight to Defendants' statements and suing them to prevent them from foreclosing. There are simply no allegations of reliance where "no dependence or confidence is placed upon the representation as a basis for a claim of legal right." *TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 675 (Tex. App.—Austin 2002, no pet.).

This result makes sense, as one must necessarily be defrauded in order to recover on a claim for fraud. Mathis claims three detriments as result of Defendants' alleged fraud: (1) he "acquiesc[ed] and allow[ed] himself and his business to be evicted," (2) his actions pursuing these lawsuits, and (3) he paid additional amounts to other lien holders. Am. Compl. [#15] ¶ 57. Mathis's first claim is contradicted by *Mathis I*, a lawsuit which exists precisely because Mathis *did not acquiesce*. The fact Mathis allowed the foreclosure to occur post-judgment is immaterial, as his only recourse at that point was to appeal, which he also did. Mathis's second claim seeks to elevate his legal fees to the status of actual damages, which is not allowed in fraud claims. *See Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("'Attorney's fees are not recoverable as actual damages in fraud cases.'" (quoting *Hennigan v. Harris Cnty.*, 593 S.W.2d 380, 385 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.)). Mathis's third claim is factually deficient, as he fails to explain how any amounts paid to other lien holders were paid in reliance on

representations he clearly did not believe were true.[6] Mathis's fraud claims will therefore be dismissed.

## C.    Forgery

Mathis's Amended Complaint labels forgery, in violation of the Texas Penal Code, as its third cause of action. Of course, "the Texas Penal Code does not create a private cause of action." *Hamilton v. Pechacek*, 319 S.W.3d 801, 813 (Tex. App.—Fort Worth 2010, no pet.). Criminal statutes are not enforced by civil plaintiffs. Mathis seems to recognize as much in Response, claiming his forgery allegations are simply used as a means of avoiding Texas's statutory cap on exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(c)(8) (exemplary damage cap does not apply to claims based on knowing or intentional forgery). The proper measure of damages is not the subject of a Rule 12(b)(6) motion, but the Court will dismiss count three of the amended complaint to the extent it was asserted as any kind of freestanding cause of action.[7]

## D.    Civil Conspiracy

"A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means." *Ernst & Young*, 51 S.W.3d at 583. The damages suffered must also be proximately caused by the conspiratorial conduct. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "Civil conspiracy requires specific intent," and therefore "parties

---

[6] From what the Court can glean from the Amended Complaint, these other liens were granted long before any misrepresentations were allegedly made by Defendants, and thus any payments Mathis made were likely owed as a result of obligations he freely incurred prior to any fraud.

[7] For similar reasons, the Court does not indulge the parties' arguments with respect to whether Mathis has properly pleaded an entitlement to exemplary damages. "Exemplary damages" are not a standalone cause of action. If Mathis ultimately succeeds on claims for which exemplary damages may be available, the Court or the jury may determine whether such damages are available based on the evidentiary record.

cannot engage in a civil conspiracy to be negligent." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.3d 608, 614 (Tex. 1996).

Mathis's civil conspiracy claim is predicated primarily on his fraud claims, and fails alongside those claims. Additionally, Mathis has failed to plead any valid combination of conspirators. A corporation "cannot conspire with itself, no matter how many of its agents participated in the wrongful action." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003). In general, "the acts of the employees or agents are acts of the principal," and therefore employees and agents cannot conspire with each other unless they act outside the scope of their employment or for their own personal benefit. *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App.—Eastland 2008, no pet.). The corporate defendants can only act through their employees or agents, who in this case happen to be the individual defendants. The alleged actions of the various individual defendants were all in the scope of their employment. Mathis has not alleged any facts demonstrating any individual defendant acted for any personal benefit. This claim is therefore dismissed.

### E.     Breach of Contract

"The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sauceda*, 268 S.W.3d at 140. Mathis and DCR are the parties to the relevant contracts, the Note and Deed of Trust.[8] DCR misinterprets Mathis's

---

[8] Mathis asserts RCH and Directed Capital were also "responsible" for the breaches. Those defendants are not parties to the contract, and thus cannot be liable for breaching it.

breach of contract claim as one alleging the foreclosure itself was a breach. To the contrary, Mathis argues it was the failure to provide proper notice of acceleration which breached the contract.

DCR argues any breach on its part was excused by Mathis's failure to perform by making timely payments. Mathis admits he was frequently late with his payments, and was three payments behind when DCR acquired the Note and Deed of Trust in September 2006. Mathis also alleges DCR continued to accept payments over the following two years, and did not seek to foreclose until January 2009. "If the non-breaching party treats the contract as continuing after the breach, he is deprived of any excuse for terminating his own performance." *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Similarly, "[i]f the non-breaching party elects to treat the contract as continuing after a breach and continues to demand performance, it obligates itself to perform fully." *Id.* at 841. Additionally, the contractual obligation to send a notice of acceleration is only triggered by Mathis defaulting on the loan. To hold the very act which triggers the contractual obligation amounts to a breach excusing performance of said obligation would render the notice provision a dead letter.

Finally, DCR re-urges its argument it was entitled to rely on the judgment of the trial court in *Mathis I.* This argument misses the mark, as the foreclosure itself is not the alleged breach. Moreover, as explained above, the authority DCR relies on for this argument does not support the kind of sweeping immunity it now claims, and the subsequent reversal of the trial court's judgment nullifies any defense such judgment might have provided to a breach of contract claim. The Court will therefore allow the breach of contract claim to go forward, but only against DCR, the other party to the contract.

-12-

**F.      Negligence and Negligent Misrepresentation**

Mathis's negligence-based claims are barred by the economic loss rule. Where the defendant's conduct only gives rise to liability because it breaches a contract, and the loss or damage is to the subject matter of the contract, a plaintiff's claims sound only in contract, not in tort. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.3d 493, 494–95 (Tex. 1991); *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The various acts or misrepresentations alleged to have injured Mathis relate solely to the subject matter of the contracts between DCR and Mathis. To the extent Mathis was injured by any defendant's failure to provide a notice of acceleration, or affirmative misrepresentation such a notice had been provided, it was only because he had a contractual right to such notice and the property was foreclosed on based upon the contract. Mathis does not address this issue in his Response. Accordingly, the Court will dismiss Mathis's negligence claims.

## Conclusion

In summary, the Court grants in part and denies in part the motion to dismiss. The Court dismisses all claims against all defendants with the exception of the following: (1) wrongful foreclosure against DCR, the foreclosing party; and (2) breach of contract against DCR, the other party to the contract. The Court notes these allegations would have been more appropriately raised in *Mathis I*, either originally or on remand. The parties are now in the unfortunate position of litigating damages claims in federal court while a declaratory judgment action involving the same contract and same property is pending, on remand after a full bench trial and appeal, in state court. As this case continues, the Court urges the parties to pay particular attention to what effect, if any, the resolution of *Mathis I* will ultimately have on the claims raised in this case.

-13-

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss [#20] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that all claims brought by Plaintiff Lawrence Mathis against Defendant DCR Mortgage III Sub I, LLC, are DISMISSED WITHOUT PREJUDICE, with the exception of the wrongful foreclosure and breach of contract claims;

IT IS FINALLY ORDERED that all claims brought by Plaintiff Lawrence Mathis against Defendants DCR Real Estate III Sub I, LLC, Directed Capital Resources, LLC, RCH Loan Servicing, LLC, Christopher Moench, Fred Razook, Lance Amano, and Suanne Yagmin are DISMISSED WITHOUT PREJUDICE.

SIGNED this the ___8th___ day of July 2013.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE